MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ISIDRO MENDOZA, JOEL FELIX
NICOLAS, JOEL MARQUEZ FLORES,
JOSUE MARTINEZ ROMANO, JUAN
OLIVARES, RIGOBERTO SEBASTIAN
RIVERA, DANIEL SILVA GARCIA,
ABRAHAM GUTIERREZ OLIVARES, JOSE
ANTONIO ROMERO, PEDRO OZIEL
NAVARRETE-CARIÑO, HORWIN
VENTURA, JESUS VIDALS RAMOS,
DANIEL BONILLA GALINDO, RICARDO
TRUJILLO GOMEZ, MIGUEL AMASTAL,
CARLOS VIDALS RAMOS, and HUGO
PAZOS FLORES *individually and on behalf of*
*others similarly situated,*

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

*Plaintiffs,*

-against-

TRIBECA RESTAURANT LLC (d/b/a
BENARES) (f/k/a BALUCHI'S), RAKESH
AGGARWAL, INDER SINGH,
GURVINDER SAHNI, RANJIT SINGH,
YOGEETA SAHNI, and SUKHDEV SINGH,
                                    *Defendants.*
-------------------------------------------------------X

Plaintiffs Isidro Mendoza, Joel Felix Nicolas, Joel Marquez Flores, Josue Martinez

Romano, Juan Olivares, Rigoberto Sebastian Rivera, Daniel Silva Garcia, Abraham Gutierrez

Olivares, Jose Antonio Romero, Pedro Oziel Navarrete-Cariño, Horwin Ventura, Jesus Vidals

Ramos, Daniel Bonilla Galindo, Ricardo Trujillo Gomez, Miguel Amastal, Carlos Vidals Ramos,

and Hugo Pazos Flores individually and on behalf of others similarly situated (collectively the "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Tribeca Restaurant LLC (d/b/a Benares) (f/k/a Baluchi's) ("Defendant Corporation"), Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh (collectively, the "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Defendants Tribeca Restaurant LLC (d/b/a Benares) (f/k/a Baluchi's), Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh.

2.      Defendants own, operate, and/or control an Indian restaurant located at 45 Murray Street, New York, New York 10007 under the name Benares.

3.      Upon information and belief, individual Defendants Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh serve or served as owners, managers, principals or agents of Defendant Tribeca Restaurant LLC (d/b/a Benares) (f/k/a Baluchi's) ("Defendant Corporation"), and through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs are former employees of Defendants. They were employed as a dishwasher and ostensibly employed as delivery workers, but the delivery workers were required to spend a considerable part of their workday performing non-tipped, non-delivery work, including various restaurant duties such as making sauces and putting them into containers, cutting vegetables, peeling potatoes, preparing food, sweeping and mopping, organizing merchandize in the basement, bringing up items from the basement and stocking it

in the kitchen, taking rice out of the oven and refilling it into containers, making dressings, purchasing items needed for the restaurant, bringing down and stocking delivered merchandise in the basement, bringing up drinks from the basement, refilling the refrigerator with drinks, transporting dirty dishes to the dishwasher, tying boxes, deconstructing boxes, cleaning the refrigerator, freezers, and the basement, conducting inventory and throwing out the garbage (hereinafter "non-tip non-delivery duties").

5.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

6.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.    Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

8.    Defendants employed and accounted for some Plaintiffs as delivery workers in their payroll, but in actuality Plaintiffs' duties required a significant amount of time spent in non-tip, non-delivery duties.

9.    Regardless, Defendants paid these Plaintiffs at a rate that was lower than the required tip-credit rate.

10.    In addition, under state law, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped non-delivery duties exceeded 20% of each workday.  12 N.Y.C.R.R. § 146-2.9.

11.    Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay Plaintiffs a lower tip-credited rate, which they still failed to pay it.

12.    In addition, Defendants maintained a policy and practice of unlawfully appropriating tipped Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

13.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

14.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.   At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work without providing the minimum wage compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y.C.R.R. Tit. 12 § 146-1.6 (herein the "Spread of Hours Wage Order") including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

19.    Plaintiff Isidro Mendoza ("Plaintiff Mendoza" or "Mr. Mendoza") is an adult individual residing in Kings County, New York. Plaintiff Mendoza was employed by Defendants from approximately May 2014 until on or about July 23, 2017.

20.    Plaintiff Joel Felix Nicolas ("Plaintiff Nicolas" or "Mr. Nicolas") is an adult individual residing in Queens County, New York. Plaintiff Nicolas was employed by Defendants from approximately October 2012 until on or about December 2015 and from approximately March 2016 until on or about July 20, 2017.

21.    Plaintiff Joel Marquez Flores ("Plaintiff Marquez" or "Mr. Marquez") is an adult individual residing in Queens County, New York. Plaintiff Marquez was employed by Defendants from approximately January 2013 until on or about July 23, 2017.

22.    Plaintiff Josue Martinez Romano ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Kings County, New York. Plaintiff Martinez was employed by Defendants from approximately August 2014 until on or about July 23, 2017.

23.    Plaintiff Juan Olivares ("Plaintiff Olivares" or "Mr. Olivares") is an adult individual residing Queens County, New York. Plaintiff Olivares was employed by Defendants from approximately August 12, 2015 until on or about July 23, 2017.

24.    Plaintiff Rigoberto Sebastian Rivera ("Plaintiff Rivera" or "Mr. Rivera") is an adult individual residing in Queens County, New York. Plaintiff Rivera was employed by Defendants from approximately February 2013 until on or about February 2016.

25.    Plaintiff Daniel Silva Garcia ("Plaintiff Silva" or "Mr. Silva") is an adult individual residing in Queens County, New York. Plaintiff Silva was employed by Defendants from approximately December 2015 until on or about April 14, 2017.

26.    Plaintiff Abraham Gutierrez Olivares ("Plaintiff Gutierrez" or "Mr. Gutierrez") is an adult individual residing in Bronx County, New York. Plaintiff Gutierrez was employed by Defendants from approximately December 2012 until on or about September 2015.

27.    Plaintiff Jose Antonio Romero ("Plaintiff Romero" or "Mr. Romero") is an adult individual residing in Bronx County, New York. Plaintiff Romero was employed by Defendants from approximately February 2016 until on or about March 2017.

28.    Plaintiff Pedro Oziel Navarette-Cariño ("Plaintiff Oziel" or "Mr. Oziel") is an adult individual residing in Kings County, New York. Plaintiff Oziel was employed by Defendants from approximately August 2015 until on or about February 2017.

29.    Plaintiff Horwin Ventura Candia ("Plaintiff Ventura" or "Mr. Ventura") is an adult individual residing in Bronx County, New York. Plaintiff Ventura was employed by Defendants from approximately September 2016 until on or about July 30, 2017.

30.    Plaintiff Jesus Vidals Ramos ("Plaintiff Vidals" or "Mr. Vidals") is an adult individual residing in Kings County, New York. Plaintiff Vidals was employed by Defendants from approximately February 2012 until on or about April 2017.

31.    Plaintiff Daniel Bonilla Galindo ("Plaintiff Bonilla" or "Mr. Bonilla") is an adult individual residing in Bronx County, New York. Plaintiff Bonilla was employed by Defendants from approximately February 2017 until on or about July 2017.

32.    Plaintiff Ricardo Trujillo Gomez ("Plaintiff Trujillo" or "Mr. Trujillo") is an adult individual residing in Kings County, New York. Plaintiff Trujillo was employed by Defendants from approximately May 30, 2016 until on or about June 4, 2017.

33.    Plaintif Miguel Amastal ("Plaintiff Amastal" or "Mr. Amastal") is an adult individual residing in Bronx County, New York. Plaintiff Amastal was employed by Defendants from approximately April 2015 until on or about September 2016.

34.    Plaintiff Carlos Vidals Ramos ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in Kings County, New York. Plaintiff Ramos was employed by Defendants from approximately March 2012 until on or about September 2016 and from approximately December 2016 until on or about January 2017.

35.     Plaintiff Hugo Pazos Flores ("Plaintiff Pazos" or "Mr. Pazos") is an adult individual residing in Queens County, New York. Plaintiff Pazos was employed by Defendants from approximately September 2015 until on or about August 2016.

*Defendants*

36.     At all relevant times, Defendants own, operate, and/or control an Indian restaurant, located at 45 Murray Street, New York, New York 10007 under the name "Benares."

37.     Upon information and belief Tribeca Restaurant LLC (d/b/a Benares) (f/k/a Baluchi's), is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 45 Murray Street, New York, New York 10007.

38.     Defendant Rakesh Aggarwal is an individual engaging in business in this judicial district during the relevant time period.  Defendant Rakesh Aggarwal is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

39.     Defendant Inder Singh is an individual engaging in business in this judicial district during the relevant time period. Defendant Inder Singh is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant

Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

40.    Defendant Gurvinder Sahni is an individual engaging in business in this judicial district during the relevant time period. Defendant Gurvinder Sahni is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

41.    Defendant Ranjit Singh is an individual engaging in business in this judicial district during the relevant time period. Defendant Ranjit Singh is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

42.    Defendant Yogeeta Sahni is an individual engaging in business in this judicial district during the relevant time period. Defendant Yogeeta Sahni is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or

possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

43.     Defendant Sukhdev Singh is an individual engaging in business in this judicial district during the relevant time period.  Defendant Sukhdev Singh is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation.  He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

44.     Defendants own, operate, and/or control an Indian restaurant located in the Tribeca section of Manhattan in New York City.

45.     Individual Defendants Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh possess or possessed operational control over Defendant Corporation, possess or possessed ownership interests in the Defendant Corporation, and control or controlled significant functions of the Defendant Corporation.

46.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

47.    Each Defendant possesses or possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

48.    Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. § 201 *et seq*. and the NYLL.

49.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

50.    Upon information and belief, individual Defendants Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as a legal entity separate and apart from themselves by, among other things:

    (a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

    (b)    defectively forming or maintaining Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

    (c)    transferring assets and debts freely as between all Defendants;

     (d)     operating Defendant Corporation for their own benefit as the sole or majority shareholders;

     (e)     operating Defendant Corporation for their own benefit and maintaining control over it as a closed corporation or closely controlled entity;

     (f)     intermingling assets and debts of their own with Defendant Corporation;

     (g)     diminishing and/or transferring assets of Defendant Corporation to protect their own interests; and

     (h)     other actions evincing a failure to adhere to the corporate form.

51.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

52.     In each year from 2012 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

53.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce.  As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

54.     Plaintiffs are former employees of Defendants employed as a dishwasher and ostensibly employed as delivery workers. However, the delivery workers were also required to perform the non-tipped non-delivery duties described above.

55.    They seek to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Isidro Mendoza*

56.    Plaintiff Mendoza was employed by Defendants from approximately May 2014 until on or about July 23, 2017.

57.    Defendants ostensibly employed Plaintiff Mendoza as a delivery worker. However, Plaintiff Mendoza also was required to perform the non-delivery non-tip duties described above.

58.    Although Plaintiff Mendoza ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

59.    Plaintiff Mendoza regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

60.    Plaintiff Mendoza's work duties required neither discretion nor independent judgment.

61.    From approximately May 2014 until on or about July 23, 2017, Plaintiff Mendoza worked from approximately 5:00 p.m. until on or about 10:30 p.m. four days a week and from approximately 5:00 p.m. until on or about 10:00 p.m. one day a week (typically 27 hours per week).

62.    Plaintiff Mendoza was paid his wages in cash.

63.    From approximately May 2014 until on or about December 2015, Defendants paid Plaintiff Mendoza a fixed salary of $20.00 per day.

64.    From approximately January 2016 until on or about July 23, 2017, Defendants paid Plaintiff Mendoza a fixed salary of $25.00 per day.

65.    Plaintiff Mendoza's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

66.    In fact, Defendants required Plaintiff Mendoza to work 30 minutes past his scheduled stop time four days a week, and did not compensate him for the additional time they required him to work.

67.    Defendants never granted Plaintiff Mendoza a meal break or rest period of any length.

68.    Plaintiff Mendoza was never notified by Defendants that his tips would be included as an offset for wages.

69.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mendoza's wages.

70.    In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Mendoza's tips and shared it with the cooks.

71.    Throughout his entire employment with Defendants, Plaintiff Mendoza was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

72.    Further, Defendants did not provide Plaintiff Mendoza with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

73.    Instead, in order to release his weekly pay, Defendants required Plaintiff Mendoza to sign a document the contents of which he was not able to review because it was in English.

- 14 -

74.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mendoza regarding wages under the FLSA and NYLL.

75.     Defendants did not give any notice to Plaintiff Mendoza in English and in Spanish (Plaintiff Mendoza's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

76.     Defendants required Plaintiff Mendoza to purchase "tools of the trade" with his own funds—including a bicycle and a helmet.

*Plaintiff Joel Felix Nicolas*

77.     Plaintiff Nicolas was employed by Defendants from approximately October 2012 until on or about December 2015 and from approximately March 2016 until on or about July 20, 2017.

78.     Defendants ostensibly employed Plaintiff Nicolas as a delivery worker. However, Plaintiff Nicolas also was required to perform the non-delivery non-tipped duties described above.

79.     Although Plaintiff Nicolas ostensibly was employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

80.     Plaintiff Nicolas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

81.     Plaintiff Nicolas' work duties required neither discretion nor independent judgment.

82.     From approximately October 2012 until on or about December 2015, Plaintiff Nicolas worked from approximately 11:00 a.m. until on or about 3:00 p.m. and then from

approximately 5:00 p.m. until on or about 11:00 p.m. or 11:30 p.m. Mondays through Fridays and from approximately 11:00 a.m. until on or about 10:30 p.m. on Sundays (typically 61.5 to 64 hours per week).

83.    From approximately March 2016 until on or about July 20, 2017, Plaintiff Nicolas worked from approximately 5:00 p.m. until on or about 10:30 p.m. Tuesdays and Thursdays (typically 11 hours per week).

84.    Throughout his employment with Defendants, Plaintiff Nicolas was paid his wages in cash.

85.    From approximately October 2012 until on or about December 2015, defendants paid Plaintiff Nicolas a fixed salary of $20.00 per shift ($40 if he worked two shifts on one day).

86.    From approximately March 2016 until on or about July 20, 2017, defendants paid Plaintiff Nicolas a fixed salary of $25.00 per shift.

87.    Plaintiff Nicolas' salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

88.    In fact, Defendants regularly required Plaintiff Nicolas to work 30 minutes past his scheduled stop time, and did not pay him for the additional time they required him to work.

89.    Plaintiff Nicolas was never notified by Defendants that his tips were being included as an offset for wages.

90.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Nicolas' wages.

91.    In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Nicolas' tips and shared it with the cooks.

92.     Throughout his entire employment with Defendants, Plaintiff Nicolas was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

93.     Further, Defendants did not provide Plaintiff Nicolas with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

94.     Instead, in order to release his weekly pay, Defendants required Plaintiff Nicolas to sign a document the contents of which he was not able to review because it was in English.

95.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Nicolas regarding wages under the FLSA and NYLL.

96.     Defendants did not give any notice to Plaintiff Nicolas, in English and in Spanish (Plaintiff Nicolas' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

97.     Defendants required Plaintiff Nicolas to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest, and lights.

*Plaintiff Joel Marquez Flores*

98.     Plaintiff Marquez was employed by Defendants from approximately January 2013 until on or about July 24, 2017.

99.     Defendants ostensibly employed Plaintiff Marquez as a delivery worker. However, Plaintiff Marquez also was required to perform the non-delivery non-tip duties described above.

100.     Although Plaintiff Marquez ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

101.     Plaintiff Marquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

102.     Plaintiff Marquez's work duties required neither discretion nor independent judgment.

103.     From approximately January 2013 until on or about July 24, 2017, Plaintiff Marquez worked from approximately 5:00 p.m. until on or about 10:40 p.m. Mondays through Saturdays (typically 34 hours per week).

104.     Throughout his employment with Defendants, Plaintiff Marquez was paid his wages in cash.

105.     From approximately January 2013 until on or about November 2016, defendants paid Plaintiff Marquez a fixed salary of $20 per day.

106.     From approximately November 2016 until on or about July 24, 2017, defendants paid Plaintiff Marquez a fixed salary of $25 per day.

107.     Plaintiff Marquez's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

108.     In fact, Defendants required Plaintiff Marquez to work 40 minutes past his scheduled stop time every day, and did not pay him for the additional time they required him to work.

109.     Defendants never granted Plaintiff Marquez a meal break or rest period of any length.

110.     Defendants never notified Plaintiff Marquez that his tips would be included as

an offset for wages.

111.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Marquez's wages.

112.    In addition, whenever clients wrote in tips of $100 or more Defendants withheld a portion of Plaintiff Marquez's tips and shared it with the cooks.

113.    Throughout his entire employment with defendants, Plaintiff Marquez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

114.    Further, Defendants did not provide Plaintiff Marquez with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

115.    Instead, in order to release his weekly pay, Defendants required Plaintiff Marquez to sign a document the contents of which he was not able to review because it was in English.

116.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Marquez regarding wages under the FLSA and NYLL.

117.    Defendants did not give any notice to Plaintiff Marquez, in English and in Spanish (Plaintiff Marquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

118.    Defendants required Plaintiff Marquez to purchase "tools of the trade" with his own funds—including a helmet, two sets of lights for the bikes, a delivery bag and an outfit for bad weather.

*Plaintiff Josue Martinez Romano*

119.   Plaintiff Martinez was employed by Defendants from approximately August 2014 until on or about July 23, 2017.

120.   Defendants ostensibly employed Plaintiff Martinez as a delivery worker. However, Plaintiff Martinez also was required to perform the non-delivery non-tip duties described above.

121.   Although Plaintiff Martinez ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

122.   Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

123.   Plaintiff Martinez's work duties required neither discretion nor independent judgment.

124.   From approximately August 2014 until on or about November 2014, Plaintiff Martinez worked from approximately 5:00 p.m. until on or about 10:30 p.m. three days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. three days a week (typically 34.5 hours per week).

125.   From approximately December 2014 until on or about March 2015, Plaintiff Martinez worked from approximately 5:00 p.m. until on or about 11:00 p.m. six days a week (typically 36 hours per week).

126.   From approximately April 2015 until on or about November 2015, Plaintiff Martinez worked from approximately 5:00 p.m. until on or about 10:30 p.m. three days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. three days a week (typically 34.5 hours per week).

127.    From approximately December 2015 until on or about March 2016, Plaintiff Martinez worked from approximately 5:00 p.m. until on or about 11:00 p.m. six days a week (typically 36 hours per week).

128.    From approximately April 2016 until on or about November 2016, Plaintiff Martinez worked from approximately 5:00 p.m. until on or about 10:30 p.m. three days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. three days a week (typically 34.5 hours per week).

129.    From approximately December 2016 until on or about March 2017, Plaintiff Martinez worked from approximately 5:00 p.m. until on or about 11:00 p.m. six days a week (typically 36 hours per week).

130.    From approximately April 2017 until on or about July 23, 2017, Plaintiff Martinez worked from approximately 5:00 p.m. until on or about 10:30 p.m. three days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. three days a week (typically 34.5 hours per week).

131.    Throughout his employment with Defendants, Plaintiff Martinez was paid his wages in cash.

132.    From approximately January 2013 until on or about December 2015, Defendants paid Plaintiff Martinez a fixed salary of $20 per day.

133.    From approximately January 2016 until on or about July 23, 2017, Defendants paid Plaintiff Martinez a fixed salary of $25 per day.

134.    Plaintiff Martinez's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

135.    In fact, Defendants required Plaintiff Martinez to work 30 minutes past his scheduled stop time three days a week from April to November and every day from December to March, and did not pay him for the additional time they required him to work.

136.    Defendants never granted Plaintiff Martinez a meal break or rest period of any length.

137.    Defendants never notified Plaintiff Martinez that his tips would be included as an offset for wages.

138.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Martinez's wages.

139.    In addition, whenever clients wrote in tips of $100 or more Defendants withheld a portion of Plaintiff Martinez's tips and shared it with the cooks.

140.    Throughout his entire employment with defendants, Plaintiff Martinez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

141.    Further, Defendants did not provide Plaintiff Martinez with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

142.    Instead, in order to release his weekly pay, Defendants required Plaintiff Martinez to sign a document the contents of which he was not able to review because it was in English.

143.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Martinez regarding wages under the FLSA and NYLL.

144.    Defendants did not give any notice to Plaintiff Martinez, in English and in

Spanish (Plaintiff Martinez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

145.    Defendants required Plaintiff Martinez to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a lock and chain, a vest, maintenance and repair for the bikes, and an outfit for bad weather.

*Plaintiff Juan Olivares*

146.    Plaintiff Olivares was employed by Defendants from approximately August 12, 2015 until on or about July 23, 2017.

147.    Defendants ostensibly employed Plaintiff Olivares as a delivery worker. However, Plaintiff Olivares also was required to perform the non-delivery non-tip duties described above.

148.    Although Plaintiff Olivares ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

149.    Plaintiff Olivares regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

150.    Plaintiff Olivares' work duties required neither discretion nor independent judgment.

151.    From approximately August 12, 2015 until on or about July 23, 2017, Plaintiff Olivares worked from approximately 5:00 p.m. until on or about 10:30 p.m. or 11:00 p.m. six days per week (typically 33 to 36 hours per week).

152.    Throughout his employment with Defendants, Plaintiff Olivares was paid his wages in cash.

153.    From approximately August 12, 2015 until on or about July 23, 2017,

Defendants paid Plaintiff Olivares a fixed salary of $25 per day.

154.    Plaintiff Olivares' salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

155.    In fact, Defendants required Plaintiff Olivares to work 30 minutes past his scheduled stop time two or three days a week, and did not pay him for the additional time they required him to work.

156.    Defendants never granted Plaintiff Olivares a meal break or rest period of any length.

157.    Defendants never notified Plaintiff Olivares that his tips would be included as an offset for wages.

158.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Olivares' wages.

159.    In addition, whenever clients wrote in tips of $100 or more Defendants withheld a portion of Plaintiff Olivares' tips and shared it with the cooks.

160.    Throughout his entire employment with defendants, Plaintiff Olivares was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

161.    Further, Defendants did not provide Plaintiff Olivares with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

162.    Instead, in order to release his weekly pay, defendants required Plaintiff Olivares to sign a document the contents of which he was not able to review because it was in English.

163.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Olivares regarding wages under the FLSA and NYLL.

164.    Defendants did not give any notice to Plaintiff Olivares, in English and in Spanish (Plaintiff Olivares' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

165.    Defendants required Plaintiff Olivares to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, three vests, a set of lights for the bikes, maintenance and repair for the bike and a chain.

### Plaintiff Rigoberto Sebastian Rivera

166.    Plaintiff Rivera was employed by Defendants from approximately February 2013 until on or about February 2016.

167.    Defendants ostensibly employed Plaintiff Rivera as a delivery worker. However, Plaintiff Rivera also was required to perform the non-delivery non-tip duties described above.

168.    Although Plaintiff Rivera ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

169.    Plaintiff Rivera regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

170.    Plaintiff Rivera's work duties required neither discretion nor independent judgment.

171.    From approximately February 2013 until on or about February 2016, Plaintiff Rivera worked from approximately 5:00 p.m. until on or about 11:00 p.m. Tuesdays through Saturdays (typically 30 hours per week).

172.    Throughout his employment with Defendants, Plaintiff Rivera was paid his wages in cash.

173.    Throughout his entire employment with Defendants, Plaintiff Rivera was paid a fixed salary of $20.00 per day.

174.    Plaintiff Rivera's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

175.    In fact, Defendants regularly required Plaintiff Rivera to continue working 30 minutes past his scheduled stop time, and did not compensate him for the additional time they required him to work.

176.    Defendants never granted Plaintiff Rivera a meal break or rest period of any length.

177.    Defendants never notified Plaintiff Rivera that his tips would be included as an offset for wages.

178.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rivera's wages.

179.    In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Rivera's tips and shared it with the cooks.

180.    Throughout his entire employment with defendants, Plaintiff Rivera was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

181.    Further, Defendants did not provide Plaintiff Rivera with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

182.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rivera regarding wages under the FLSA and NYLL.

183.    Defendants did not give any notice to Plaintiff Rivera, in English and in Spanish (Plaintiff Rivera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

184.    Defendants required Plaintiff Rivera to purchase "tools of the trade" with his own funds—including one bike, a helmet, two sets of lights, a delivery bag and a jacket for bad weather.

*Plaintiff Daniel Silva Garcia*

185.    Plaintiff Silva was employed by Defendants from approximately December 2015 until on or about April 14, 2017.

186.    Defendants ostensibly employed Plaintiff Silva as a delivery worker. However, Plaintiff Silva also was required to perform the non-delivery non-tip duties described above.

187.    Although Plaintiff Silva ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

188.    Plaintiff Silva regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

189.    Plaintiff Silva's work duties required neither discretion nor independent judgment.

190.    Plaintiff Silva regularly worked in excess of 40 hours a week.

191.    From approximately December 2015 until on or about April 14, 2017, Plaintiff Silva worked from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 11:00 p.m. six days a week (typically 60 hours per week).

192.    Throughout his employment with Defendants, Plaintiff Silva was paid his wages in cash.

193.    From approximately December 2015 until on or about December 2016, defendants paid Plaintiff Silva a fixed salary of $20.00 per shift ($40.00 per day).

194.    From approximately January 2017 until on or about April 14, 2017, defendants paid Plaintiff Silva a fixed salary of $25.00 per shift ($50.00 per day).

195.    Plaintiff Silva's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

196.    In fact, Defendants regularly required Plaintiff Silva to continue working 30 minutes to 1 hour past his scheduled stop time, and did not compensate him for the additional time they required him to work.

197. Defendants never notified Plaintiff Silva that his tips would be included as an offset for wages.

198.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Silva's wages.

199.  In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Silva's tips and shared it with the cooks.

200.    Throughout his entire employment with defendants, Plaintiff Silva was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

201.  Further, Defendants did not provide Plaintiff Silva with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

202.  Instead, in order to release his weekly pay, defendants required Plaintiff Silva to sign a document the contents of which he was not able to review because it was in English.

203.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Silva regarding wages under the FLSA and NYLL.

204.  Defendants did not give any notice to Plaintiff Silva, in English and in Spanish (Plaintiff Silva's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

205.    Defendants required Plaintiff Silva to purchase "tools of the trade" with his own funds—including one bike, a helmet, a set of lights, lock and chain, and a vest.

*Plaintiff Abraham Gutierrez Olivares*

206.    Plaintiff Gutierrez was employed by Defendants from approximately December 2012 until on or about September 2015.

207.    Defendants ostensibly employed Plaintiff Gutierrez as a delivery worker. However, Plaintiff Gutierrez also was required to perform the non-delivery non-tip duties described above.

208.    Although Plaintiff Gutierrez ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

209. Plaintiff Gutierrez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

210. Plaintiff Gutierrez's work duties required neither discretion nor independent judgment.

211. From approximately December 2012 until on or about November 2013, Plaintiff Gutierrez worked from approximately 10:30 a.m. until on or about 3:00 p.m. Sundays through Fridays and from approximately 10:30 a.m. until on or about 3:00 p.m. one or two Saturdays a month (typically 27 or 31.5 hours per week).

212. From approximately November 2013 until on or about September 2015, Plaintiff Gutierrez worked from approximately 10:30 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 10:30 p.m. Sundays through Fridays and from approximately 10:30 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 10:30 p.m. one or two Saturdays a month (typically 60 or 70 hours per week).

213. Throughout his employment with Defendants, Plaintiff Gutierrez was paid his wages in cash.

214. From approximately December 2012 until on or about September 2015, defendants paid Plaintiff Gutierrez a fixed salary of $20.00 per shift.

215. Plaintiff Gutierrez's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

216. In fact, Defendants regularly required Plaintiff Gutierrez to continue working 30 minutes to 1 hour past his scheduled stop time, and did not compensate him for the additional time they required him to work.

217.  Defendants never notified Plaintiff Gutierrez that his tips would be included as an offset for wages.

218.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gutierrez's wages.

219.  In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Gutierrez's tips and shared it with the cooks.

220.    Throughout his entire employment with defendants, Plaintiff Gutierrez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

221.  Further, Defendants did not provide Plaintiff Gutierrez with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

222.  On more than one occasion, in order to release his weekly pay, defendants required Plaintiff Gutierrez to sign a document the contents of which he was not able to review because it was in English.

223.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gutierrez regarding wages under the FLSA and NYLL.

224.  Defendants did not give any notice to Plaintiff Gutierrez, in English and in Spanish (Plaintiff Gutierrez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

225.    Defendants required Plaintiff Gutierrez to purchase "tools of the trade" with his own funds—including one bike, four helmets, a sets of lights, vest and bike maintenance.

*Plaintiff Jose Antonio Romero Romero*

226.    Plaintiff Romero was employed by Defendants from approximately February 2016 until on or about March 2017.

227.    Defendants ostensibly employed Plaintiff Romero as a delivery worker. However, Plaintiff Romero also was required to perform the non-delivery non-tip duties described above.

228.    Although Plaintiff Romero ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

229.    Plaintiff Romero regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

230.    Plaintiff Romero's work duties required neither discretion nor independent judgment.

231.    From approximately February 2016 until on or about March 2017, Plaintiff Romero worked from approximately 12:00 p.m. until on or about 11:30 p.m. two days a week and from approximately 12:00 p.m. until on or about 11:00 p.m. one day a week (typically 34 hours per week).

232.    Throughout his employment with Defendants, Plaintiff Romero was paid his wages in cash.

233.    From approximately February 2016 until on or about March 2017, Defendants paid Plaintiff Romero a fixed salary of $50.00 per day.

234.    Plaintiff Romero's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

235.    In fact, Defendants required Plaintiff Romero to continue working 30 minutes past his scheduled stop time twice a week, and did not compensate him for the additional time they required him to work.

236.    Defendants never granted Plaintiff Romero a meal break or rest period of any length.

237.    Defendants never notified Plaintiff Romero that his tips would be included as an offset for wages.

238.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Romero's wages.

239.    Throughout his entire employment with defendants, Plaintiff Romero was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

240.    Further, Defendants did not provide Plaintiff Romero with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

241.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Romero regarding wages under the FLSA and NYLL.

242.    Defendants did not give any notice to Plaintiff Romero, in English and in Spanish (Plaintiff Romero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

243.    Defendants required Plaintiff Romero to purchase "tools of the trade" with his own funds—including one bike, a helmet, a set of lights, and a vest.

*Plaintiff Pedro Oziel Navarrete-Cariño*

- 33 -

244.    Plaintiff Oziel was employed by Defendants from approximately August 2015 until on or about February 2017.

245.    Defendants ostensibly employed Plaintiff Oziel as a delivery worker. However, Plaintiff Oziel also was required to perform the non-delivery non-tip duties described above.

246.    Although Plaintiff Oziel ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

247.    Plaintiff Oziel regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

248.    Plaintiff Oziel's work duties required neither discretion nor independent judgment.

249.    From approximately August 2015 until on or about February 2017, Plaintiff Oziel worked from approximately 5:00 p.m. until on or about 10:00 p.m. or 10:30 p.m. Mondays through Fridays (typically 25 or 27.5 hours per week).

250.    Throughout his employment with Defendants, Plaintiff Oziel was paid his wages in cash.

251.    From approximately August 2015 until on or about February 2017, defendants paid Plaintiff Oziel a fixed salary of $20.00 per shift.

252.    Plaintiff Oziel's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

253.    In fact, Defendants regularly required Plaintiff Oziel to continue working 30 minutes past his scheduled stop time, and did not compensate him for the additional time they required him to work.

254.  Defendants never granted Plaintiff Oziel a meal break or rest period of any length.

255. Defendants never notified Plaintiff Oziel that his tips would be included as an offset for wages.

256.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Oziel's wages.

257. In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Oziel's tips and shared it with the cooks.

258. Further, Defendants did not provide Plaintiff Oziel with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

259.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Oziel regarding wages under the FLSA and NYLL.

260. Defendants did not give any notice to Plaintiff Oziel, in English and in Spanish (Plaintiff Oziel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

261.   Defendants required Plaintiff Oziel to purchase "tools of the trade" with his own funds—including a helmet, a set of lights, and bike maintenance.

*Plaintiff Horwin Ventura Candia*

262.   Plaintiff Ventura was employed by Defendants from approximately September 2016 until on or about July 30, 2017.

263.   Defendants ostensibly employed Plaintiff Ventura as a delivery worker. However, Plaintiff Ventura also was required to perform the non-delivery non-tip duties described above.

264.    Although Plaintiff Ventura ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

265.    Plaintiff Ventura regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

266.    Plaintiff Ventura's work duties required neither discretion nor independent judgment.

267.    From approximately September 2016 until on or about July 30, 2017, Plaintiff Ventura worked from approximately 5:00 p.m. until on or about 10:30 p.m. two days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. three days a week (typically 29 hours per week).

268.    Throughout his employment with Defendants, Plaintiff Ventura was paid his wages in cash.

269.    From approximately September 2016 until on or about July 30, 2017, defendants paid Plaintiff Ventura a fixed salary of $25.00 per shift.

270.    Plaintiff Ventura's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

271.    In fact, Defendants regularly required Plaintiff Ventura to continue working 15 to 20 minutes past his scheduled stop time, and did not compensate him for the additional time they required him to work.

272.    Defendants never granted Plaintiff Ventura a meal break or rest period of any length.

273.    Defendants never notified Plaintiff Ventura that his tips would be included as an offset for wages.

274.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ventura's wages.

275.  In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Ventura's tips and shared it with the cooks.

276.  Further, Defendants did not provide Plaintiff Ventura with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

277.  Instead, in order to release his weekly pay, defendants required Plaintiff Ventura to sign a document the contents of which he was not able to review because it was in English.

278.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ventura regarding wages under the FLSA and NYLL.

279.  Defendants did not give any notice to Plaintiff Ventura, in English and in Spanish (Plaintiff Ventura's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

280.    Defendants required Plaintiff Ventura to purchase "tools of the trade" with his own funds—including a bike, helmet, a sets of lights, lock and chain, a vest and bike maintenance.

*Plaintiff Jesus Vidals Ramos*

281.    Plaintiff Vidals was employed by Defendants from approximately February 2012 until on or about April 2017.

282.    Defendants employed Plaintiff Vidals as a dishwasher.

283.    Plaintiff Vidals regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

284.    Plaintiff Vidals' work duties required neither discretion nor independent judgment.

285.    Plaintiff Vidals regularly worked in excess of 40 hours a week.

286.    From approximately February 2012 until on or about April 2017, Plaintiff Vidals worked from approximately 9:30 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 11:30 p.m. Mondays through Saturdays (typically 72 hours per week).

287.    Throughout his employment with Defendants, Plaintiff Vidals was paid his wages in cash.

288.    From approximately February 2012 until on or about August 2014, defendants paid Plaintiff Vidals a fixed salary of $400.00 per week.

289.    From approximately August 2014 until on or about April 2017, defendants paid Plaintiff Vidals a fixed salary of $450.00 per week.

290.    Plaintiff Vidals' salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

291.    In fact, Defendants regularly required Plaintiff Vidals to continue working 30 minutes past his scheduled stop time, and did not compensate him for the additional time they required him to work.

292.    Throughout his entire employment with defendants, Plaintiff Vidals was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

293.   Further, Defendants did not provide Plaintiff Vidals with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

294.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vidals regarding wages under the FLSA and NYLL.

295.   Defendants did not give any notice to Plaintiff Vidals, in English and in Spanish (Plaintiff Vidals' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

296.   Defendants required Plaintiff Vidals to purchase "tools of the trade" with his own funds—including two kitchen pair of shoes.

*Plaintiff Daniel Bonilla Galindo*

297.   Plaintiff Bonilla was employed by Defendants from approximately February 2017 until on or about July 2017.

298.   Defendants ostensibly employed Plaintiff Bonilla as a delivery worker. However, Plaintiff Bonilla also was required to perform the non-delivery non-tip duties described above.

299.   Although Plaintiff Bonilla ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

300.   Plaintiff Bonilla regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

301.   Plaintiff Bonilla's work duties required neither discretion nor independent judgment.

302.    From approximately February 2017 until on or about July 2017, Plaintiff Bonilla worked from approximately 11:00 a.m. until on or about 3:00 or 3:15 p.m. five days a week (typically 20 or 21.25 hours per week).

303.    Throughout his employment with Defendants, Plaintiff Bonilla was paid his wages in cash.

304.    From approximately February 2017 until on or about July 2017, Plaintiff Bonilla was paid a fixed salary of $25.00 per shift.

305.    Plaintiff Bonilla's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

306.    In fact, Defendants regularly required Plaintiff Bonilla to continue working 15 minutes past his scheduled stop time, and did not compensate him for the additional time they required him to work.

307. Defendants never granted Plaintiff Bonilla a meal break or rest period of any length.

308.    Throughout his entire employment with defendants, Plaintiff Bonilla was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

309. Defendants never notified Plaintiff Bonilla that his tips would be included as an offset for wages.

310.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Bonilla's wages.

311. In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Bonilla's tips and shared it with the cooks.

- 40 -

312.  Further, Defendants did not provide Plaintiff Bonilla with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

313.    Instead, in order to release his weekly pay, defendants required Plaintiff Bonilla to sign a document the contents of which he was not able to review because it was in English.

314.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Bonilla regarding wages under the FLSA and NYLL.

315.  Defendants did not give any notice to Plaintiff Bonilla, in English and in Spanish (Plaintiff Bonilla's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

316.  Defendants required Plaintiff Bonilla to purchase "tools of the trade" with his own funds—including a helmet, a vest and bike maintenance.

*Plaintiff Ricardo Trujillo Gomez*

317.    Plaintiff Trujillo was employed by Defendants from approximately May 30, 2016 until on or about June 4, 2017.

318.    Defendants ostensibly employed Plaintiff Trujillo as a delivery worker. However, Plaintiff Trujillo also was required to perform the non-delivery non-tip duties described above.

319.    Although Plaintiff Trujillo ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

320.    Plaintiff Trujillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

- 41 -

321.    Plaintiff Trujillo's work duties required neither discretion nor independent judgment.

322.    From approximately May 30, 2016 until on or about June 4, 2017, Plaintiff Trujillo worked from approximately 5:00 p.m. until on or about 11:00 p.m. five days a week. (Typically 30 hours per week).

323.    Throughout his employment with Defendants, Plaintiff Trujillo was paid his wages in cash.

324.    From approximately May 30, 2016 until on or about June 4, 2017, defendants paid Plaintiff Trujillo a fixed salary of $25.00 per day.

325.    Plaintiff Trujillo's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

326.    In fact, Defendants regularly required Plaintiff Trujillo to continue working 1 hour past his scheduled stop time, and did not compensate him for the additional time they required him to work.

327. Defendants never granted Plaintiff Trujillo a meal break or rest period of any length.

328.    Throughout his entire employment with defendants, Plaintiff Trujillo was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

329. Defendants never notified Plaintiff Trujillo that his tips would be included as an offset for wages.

330.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Trujillo's wages.

331.  Further, Defendants did not provide Plaintiff Trujillo with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

332.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Trujillo regarding wages under the FLSA and NYLL.

333.  Defendants did not give any notice to Plaintiff Trujillo, in English and in Spanish (Plaintiff Trujillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

334.   Defendants required Plaintiff Trujillo to purchase "tools of the trade" with his own funds—including a bike, helmet, jacket, vest and bike maintenance.

*Plaintiff Miguel Amastal*

335.   Plaintiff Amastal was employed by Defendants from approximately April 2015 until on or about September 2016.

336.   Defendants ostensibly employed Plaintiff Amastal as a delivery worker. However, Plaintiff Amastal also was required to perform the non-delivery non-tip duties described above.

337.   Although Plaintiff Amastal ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

338.   Plaintiff Amastal regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

339.   Plaintiff Amastal's work duties required neither discretion nor independent judgment.

340.     From approximately April 2015 until on or about September 2016, Plaintiff Amastal worked from approximately 5:00 p.m. until on or about 10:00 p.m. one day a week and from approximately 5:00 p.m. until on or about 10:45 p.m. four days a week. (typically 28 hours per week).

341.     Throughout his employment with Defendants, Plaintiff Amastal was paid his wages in cash.

342.     From approximately April 2015 until on or about September 2016, defendants paid Plaintiff Amastal a fixed salary of $20.00 per day.

343.     Plaintiff Amastal's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

344.     In fact, Defendants required Plaintiff Amastal to continue working 30 to 45 minutes past his scheduled stop time four days a week, and did not compensate him for the additional time they required him to work.

345.   Defendants never granted Plaintiff Amastal a meal break or rest period of any length.

346.     Throughout his entire employment with defendants, Plaintiff Amastal was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

347.   Defendants never notified Plaintiff Amastal that his tips would be included as an offset for wages.

348.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Amastal's wages.

349.  Further, Defendants did not provide Plaintiff Amastal with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

350.    Instead, in order to release his weekly pay, defendants required Plaintiff Amastal to sign a document the contents of which he was not able to review because it was in English.

351.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Amastal regarding wages under the FLSA and NYLL.

352.  Defendants did not give any notice to Plaintiff Amastal, in English and in Spanish (Plaintiff Amastal's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

353.  Defendants required Plaintiff Amastal to purchase "tools of the trade" with his own funds—including a bike, helmet, a set of lights, a lock and a chain, a vest and bike maintenance.

*Plaintiff Carlos Vidals Ramos*

354.    Plaintiff Ramos was employed by Defendants from approximately March 2012 until on or about September 2016, and from approximately December 2016 until on or about January 2017.

355.    Defendants ostensibly employed Plaintiff Ramos as a delivery worker. However, Plaintiff Ramos also was required to perform the non-delivery non-tip duties described above.

356.    Although Plaintiff Ramos ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

- 45 -

357.    Plaintiff Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

358.    Plaintiff Ramos' work duties required neither discretion nor independent judgment.

359.    From approximately March 2012 until on or about December 2013, Plaintiff Ramos worked from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 11:15 p.m. five days a week and from approximately 11:00 a.m. until on or about 11:00 p.m. on Sundays (typically 63.25 hours per week).

360.    From approximately January 2014 until on or about September 2016, Plaintiff Ramos worked from approximately 11:00 a.m. until on or about 3:00 p.m. Sundays through Fridays (typically 24 hours per week).

361.    From approximately December 2016 until on or about January 2017, Plaintiff Ramos worked from approximately 11:00 a.m. until on or about 3:00 p.m. Sundays through Fridays (typically 24 hours per week).

362.    Throughout his employment with Defendants, Plaintiff Ramos was paid his wages in cash.

363.    From approximately March 2012 until on or about January 2016, Defendants paid Plaintiff Ramos a fixed salary of $20.00 per shift.

364.    From approximately January 2016 until on or about September 2016, Defendants paid Plaintiff Ramos a fixed salary of $25.00 per shift.

365.    From approximately December 2016 until on or about January 2017, Defendants paid Plaintiff Ramos a fixed salary of $25.00 per shift.

366.    Plaintiff Ramos salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

367.    In fact, Defendants regularly required Plaintiff Ramos to continue working 15 minutes past his scheduled stop time, and did not compensate him for the additional time they required him to work.

368.  Defendants never granted Plaintiff Ramos a meal break or rest period of any length.

369.    Throughout his entire employment with Defendants, Plaintiff Ramos was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

370.  Defendants never notified Plaintiff Ramos that his tips would be included as an offset for wages.

371.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramos' wages.

372.    In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Ramos' tips and shared it with the cooks.

373.  Further, Defendants did not provide Plaintiff Ramos with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

374.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramos regarding wages under the FLSA and NYLL.

375.  Defendants did not give any notice to Plaintiff Ramos, in English and in Spanish (Plaintiff Ramos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

376.  Defendants required Plaintiff Ramos to purchase "tools of the trade" with his own funds—including two bikes, helmet, and a vest.

*Plaintiff Hugo Pazos Flores*

377.   Plaintiff Pazos was employed by Defendants from approximately September 2015 until on or about August 2016.

378.   Defendants ostensibly employed Plaintiff Pazos as a delivery worker. However, Plaintiff Pazos also was required to perform the non-delivery non-tip duties described above.

379.   Although Plaintiff Pazos ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

380.   Plaintiff Pazos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

381.   Plaintiff Pazos' work duties required neither discretion nor independent judgment.

382.   From approximately September 2015 until on or about August 2016, Plaintiff Pazos worked from approximately 5:00 p.m. until on or about 10:30 p.m. five days a week (typically 27.5 hours per week).

383.   Throughout his employment with Defendants, Plaintiff Pazos was paid his wages in cash.

384.   From approximately September 2015 until on or about January 2016, Defendants paid Plaintiff Pazos a fixed salary of $20.00 per shift.

385.    From approximately February 2016 until on or about August 2016, Defendants paid Plaintiff Pazos a fixed salary of $25.00 per shift.

386.    Plaintiff Pazos salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

387.    In fact, Defendants regularly required Plaintiff Pazos to continue working past his scheduled stop time, and did not compensate him for the additional time they required him to work.

388.    Defendants never granted Plaintiff Pazos a meal break or rest period of any length.

389.    Throughout his entire employment with Defendants, Plaintiff Pazos was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

390.    Defendants never notified Plaintiff Pazos that his tips would be included as an offset for wages.

391.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Pazos' wages.

392.    In addition, whenever clients wrote in tips of $100 or more, Defendants withheld a portion of Plaintiff Pazos' tips and shared it with the cooks.

393.    Further, Defendants did not provide Plaintiff Pazos with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

394.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Pazos regarding wages under the FLSA and NYLL.

395.    Defendants did not give any notice to Plaintiff Pazos, in English and in Spanish (Plaintiff Pazos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

396.    Defendants required Plaintiff Pazos to purchase "tools of the trade" with his own funds—including two bikes, a helmet and a vest.

*Defendants' General Employment Practices*

397. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

398.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

399.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

400.    Defendants habitually required Plaintiffs to work additional time beyond their regular shifts but did not provide them with any additional compensation.

401.    Defendants required all delivery workers, including Plaintiffs, to perform general non-tipped non-delivery restaurant tasks in addition to their primary duties as delivery workers.

402.    Plaintiffs, and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped non-delivery duties.

- 50 -

403.     Plaintiffs and all other delivery workers were never paid at the required lower tip-credit rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because the delivery workers' and Plaintiffs' non-tipped duties exceeded 20% of each workday (12 N.Y.C.R.R. § 146).

404.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he is assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§ 137-3.3 and 137-3.4).

405.     Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

406.     The delivery workers', including Plaintiffs', duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

407.     In violation of federal and state law as codified above, Defendants classified Plaintiffs and other delivery workers as tipped employees, but never paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

408.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

409.     Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

410.     Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

411.    Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

412.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

413.    Plaintiffs were paid their wages entirely in cash.

414.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

415.    Defendants failed to post required wage and hour posters in the restaurant, and did not provide their employees, including Plaintiffs, with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of their employees', including Plaintiffs', relative lack of sophistication in wage and hour laws.

416.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

417.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

418.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery

workers.

419.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL § 195(3).

420.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" name used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

421.    Plaintiffs bring their FLSA minimum wage, overtime and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

422.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

423.    At all relevant times, Plaintiffs, and other members of the FLSA class who are and/or were similarly situated in that they had substantially similar job requirements and pay provisions, were subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime and one and one half times the regular rate , willfully taking improper wage deductions and other improper credits against Plaintiffs' wages for which Defendants did not qualify under the FLSA and willfully failing to keep records required by the FLSA.

424.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or were similarly situated, were subject to Defendants' willful failure to keep records required by the FLSA.

425.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**FIRST CAUSE OF ACTION**
**(VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)**

426.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth

herein

427.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

428.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

429.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

430.    Defendants failed to pay Plaintiffs and the FLSA class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

431.    Defendants' failure to pay Plaintiffs and the FLSA class members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

432.    Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

433.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

434.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs and the FLSA class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

435.    Defendants' failure to pay Plaintiffs and the FLSA class members overtime

compensation is willful within the meaning of 29 U.S.C. § 255(a).

436.    Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

437.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

438.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

439.    Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

440.    Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of NYLL § 663.

441.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK LABOR LAW)

442.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

443.    Defendants, in violation of the NYLL Art. 19 and 12 N.Y.C.R.R. § 146-1.4, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular

rate of pay for each hour worked in excess of forty hours in a work week.

444.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of NYLL § 663.

445.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

446.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

447.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs spread of hours exceeded ten hours in violation of NYLL § 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

448.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

449.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

450.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

451.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names

used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL § 195(1).

452.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

453.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

454.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked,, as required by NYLL § 195(3).

455.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### EIGHTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

456.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

457.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their job, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29

U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

458.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION OF THE NEW YORK LABOR LAW)

459.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

460.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

461.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

462.    Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

463.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

464.     Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.


Dated: New York, New York
      October 29, 2017

                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                    _____/s/ Michael Faillace_____ ___

          By:    Michael A. Faillace [MF-8436]
                60 East 42nd Street, Suite 4510
                New York, New York 10165
                (212) 317-1200
                *Attorneys for Plaintiffs*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

July 27, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                        Isidro Mendoza

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         July 27, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Joel Felix Nicolas

                                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                        27 de julio de 2017

Date / Fecha:

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Joel Marquez-Flores

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      27 de julio de 2017

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 27, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                    Josue Martinez Romano

Legal Representative/ Representante       Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                     July 27, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Rigoberto Sebastian Rivera

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                         Sebastian R.

Date / Fecha:                                27 de julio de 2017

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Juan Olivares

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    27 de julio de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 31, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          Daniel Silva Garcia

Legal Representative/ Representante     Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:                      Daniel Silva G.

Date/ Fecha:                           July 31, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

July 31, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Abraham Gutierrez Olivares

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    31 de julio de 2017

_Certified as a minority-owned business in the State of New York_

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

One Grand Central Place
60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

August 1, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                    Jose Antonio Romero Romero

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      August 1, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 2, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Horwin Ventura Candia

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           02 de agosto de 2017

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———

Faillace@employmentcompliance.com

August 2, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Pedro Oziel Navarrete-Cariño

                                 Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:               *Pedro*

                                 02 de agosto de 2017

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

August 4, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Miguel Amastal

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          04 de agosto de 2017

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

August 2, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          <u>Jesus Vidals  Ramos</u>

Legal Representative / Abogado:     <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:       <u>Jusdliz</u>

Date / Fecha:              <u>02 de agosto de 2017</u>

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 3, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Daniel Bonilla Galindo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      03 de agosto de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 4, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Ricardo Trujillo Gomez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     04 de agosto de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                     Telephone: (212) 317-1200
New York, New York 10165                                     Facsimile: (212) 317-1620
————

Faillace@employmentcompliance.com

                                                                      August 3, 2017

BY HAND


TO:    Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          **Carlos Vidals- Ramos**

                                                  Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

                                                  _Carlos Vidals_

Signature / Firma:
                                                  ___03 de agosto de 2017___

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 25, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          <u>Hugo Pazos Flores</u>

Legal Representative/ Representante     <u>Michael Faillace & Associates, P.C.</u>
Legal:

Signature/ Firma:                      _____

Date/ Fecha:                           <u>August 25, 2017</u>

*Certified as a minority-owned business in the State of New York*